**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 12-41224-MSH |
| ANTHONY A. MAZZONE and | ) | |
| MICHELLE M. MAZZONE | ) | |
| | ) | |
| Debtors | ) | |
| | ) | |
| WILLIAM K. HARRINGTON, | ) | |
| UNITED STATES TRUSTEE | ) | |
| | ) | Adversary Proceeding |
| Plaintiff | ) | No. 13-04055 |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY A. MAZZONE and | ) | |
| MICHELLE M. MAZZONE | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OF DECISION**

William K. Harrington, the United States Trustee ("UST") for this region, initiated this adversary proceeding seeking to revoke the chapter 7 discharge of Anthony and Michelle Mazzone, the debtors in the main bankruptcy case, pursuant to § 727(d)(1) of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*). In his complaint, the UST alleges that the Mazzones made fraudulent misrepresentations in connection with their bankruptcy case which came to his attention only after the Mazzones' discharge had entered. The matter was tried on March 19, 2014, and I now present my findings of fact and conclusions of law in accordance with FED. R. BANKR. P. 7052.

1

**I.      Findings of Fact**

On December 31, 2009, the Mazzones met Robert Bost at the New Year's party of a mutual friend. At the party or shortly thereafter, the Mazzones learned that Mr. Bost was recently divorced and looking for a place to live. Mr. Bost and the Mazzones agreed verbally that Mr. Bost could live in the basement apartment of the Mazzones' home in Methuen, Massachusetts. The Mazzones requested $1,200.00 per month rent but the parties settled on $850.00 per month to start. At some point the rent increased to $950.00 per month. None of the terms of the rental arrangement were committed to writing. Mr. Bost moved into the Mazzones basement apartment in mid-January 2010.

The apartment contains a bedroom, kitchen with all standard appliances, bathroom, and separate locked entrance. The apartment did not have its own address nor did it comply with Methuen's zoning ordinance regarding accessory apartments and multi-family dwellings.

Mr. Bost lived in the Mazzones' basement apartment until mid-December 2012. During this time, Mr. Bost paid the agreed upon monthly rent by cash, check, in kind, or by some combination thereof. For example, the Mazzones would credit Mr. Bost for rent if he assisted them with childcare duties. Additionally, Mr. Bost received rent credit by advancing sums to the Mazzones for certain household expenses, such as new appliances or a new pool cover. On one occasion, Mr. Bost advanced $1,000.00 to help pay the Mazzones' bankruptcy attorney. Mr. Bost also paid for the Mazzones and their two children to accompany him and his daughter on vacation on more than one occasion, paying as much as $3,000.00 for one trip. The Mazzones would reduce Mr. Bost's rent to offset sums advanced by him for their benefit.

The Mazzones requested that Mr. Bost make monthly rent payments in cash. They also

requested that Mr. Bost not take the state income tax deduction for rental payments available to Massachusetts taxpayers. The Mazzones made these requests so that the City of Methuen would not discover their illegal basement apartment and the federal and state taxing authorities would not discover their rental income which they did not declare on their state and federal income tax returns for either 2010 or 2011. In their testimony at trial, both Mr. and Ms. Mazzone denied asking Mr. Bost to pay rent in cash and to forgo his state tax deduction in order to conceal their deal, which is what Mr. Bost stated in his trial testimony. The Mazzones where not credible witnesses on this and many other matters at trial. Their testimony was contrived, disingenuous and contradictory. Mr. Bost's testimony on these and other disputed issues was credible.

On March 31, 2012, the Mazzones filed their joint voluntary petition for relief under chapter 7 of the Bankruptcy Code. Mr. Bost was still living in the Mazzones' basement apartment at the time of the Mazzones' bankruptcy filing. In documents filed by the Mazzones under oath at the time of their bankruptcy petition, the Mazzones disclosed their income from Ms. Mazzone's job as a nurse and Mr. Mazzone's job as a chef, but never disclosed or even referenced any rental agreement with or income from Mr. Bost. On schedule A (real property) of the schedules of assets and liabilities filed by the Mazzones in support of their bankruptcy petition, they listed their home in Methuen. On schedule G (executory contracts and unexpired leases) the Mazzones checked the box indicating they had no executory contracts or unexpired leases. On schedule I (current income) the Mazzones listed zero in "income from rental property" on line eight and zero in "other monthly income" on line thirteen.[1] On their Statement of Financial Affairs ("SOFA"), also accompanying their bankruptcy petition, the Mazzones do not list any rental income in item one, which seeks

---

[1] Schedule I requests disclosure of an estimate of monthly income from various sources as of the petition date.

3

disclosure of "income for employment or operation of business," and checked the box for "none" in item two, which seeks disclosure of "income other than from employment or operation of business."[2] On their Chapter 7 Statement of Current Monthly Income and Means-Test Calculation, often referred to as "Form B22A," the Mazzones listed zero in "rents and other real property income" in response to item five and zero in "income from all other sources" in response to item ten.[3]

On May 7, 2012, at their meeting of creditors pursuant to Bankruptcy Code §341, the Mazzones affirmed under oath that the schedules and statements filed in support of their bankruptcy petition were true and accurate. None of the Mazzones' schedules or statements was ever amended.

The UST sent a letter, dated May 2, 2012, to the Mazzones requesting answers to certain questions as well as documents in order to verify that their bankruptcy filing was not an abuse of the provisions of the Bankruptcy Code. In response to the question "please state whether any persons reside with you, their name(s) and their contribution to the household" the Mazzones stated in a signed and notarized affidavit dated May 31, 2012, that "the only others who live with us are our daughters…they do not contribute to the household."

Based on the schedules and statements filed in support of the Mazzones' bankruptcy petition and the documentation and affidavit provided in response to his May 2, 2012 letter, the UST determined that the Mazzones' bankruptcy filing was not an abuse of the provisions of the

---

[2] Items one and two of the SOFA request disclosure of income for the calendar year of the bankruptcy filing through the petition date as well as for the two full calendar years immediately preceding the year of the bankruptcy filing.

[3] Form B22A requires disclosure of average monthly income from various sources for the six months immediately preceding the bankruptcy petition date.

4

Bankruptcy Code. On June 1, 2012, David M. Nickless, the chapter 7 trustee of the Mazzones' bankruptcy estate, filed with the court his Report of No Distribution indicating that there were no estate assets available for distribution by him to creditors. On July 9, 2012, the Mazzones received their bankruptcy discharge, as a result of which they were relieved of personal liability for $71,347.77 in unsecured debts. On July 12, 2012, the Mazzones' chapter 7 case was closed.

In mid-December 2102, the Mazzones obtained a state court restraining order against Mr. Bost requiring him to stay away from their children. Shortly thereafter, Mr. Bost vacated the Mazzones' basement apartment. The circumstances surrounding the restraining order and Mr. Bost's moving out of the Mazzones' basement apartment generated a great deal of animosity between the parties. Sometime thereafter, Mr. Bost contacted the office of the UST and disclosed that he had been paying rent to the Mazzones from early 2010 through December 2012. Mr. Bost also provided to the UST photocopies of rent checks and copies of text message screenshots relevant to his rental relationship with the Mazzones.

On July 9, 2013, the UST filed an emergency motion to reopen the Mazzones' chapter 7 case, which I granted on the same day. Also on July 9, 2013, based on the information provided by Mr. Bost, the UST initiated this adversary proceeding seeking to revoke the Mazzones' chapter 7 discharge pursuant to § 727(d)(1).

**II.    The Dispute**

The UST asserts that the Mazzones knowingly and fraudulently concealed $850.00 to $950.00 per month in pre-petition rental income both in their written bankruptcy schedules and statements and in their testimony at the section 341 meeting of creditors. Further, the UST alleges that he was unaware of the Mazzones' fraud prior to the entry of the order granting their discharge

5

and that it was the Mazzones' fraudulent conduct in concealing the facts regarding their rental income that resulted in their receiving a discharge in the first place. As a result, the UST's seeks revocation of the Mazzones' discharge pursuant to Bankruptcy Code § 727(d)(1).

The Mazzones take issue with the UST's underlying premise that they failed to disclose material financial information. They attempt to present an entirely different factual narrative than the one the UST relies on. They maintain, consistent with their trial testimony, that they were not renting an apartment to Mr. Bost but merely helping a friend by providing him with a place to stay in the wake of a divorce. The Mazzones claim that payments they received from Mr. Bost did not constitute rent but were meant to cover increased household expenses, such as water and electricity, attributable to Mr. Bost's staying with them. The Mazzones further claim and testified that Mr. Bost rarely even stayed in the basement apartment, their estimates of his occupancy ranging from a few days a week to each few days each month. In sum, the Mazzones maintain that their basement was not an apartment but merely a guest area where they let Mr. Bost, a friend, stay and that he paid them intermittently, not rent, but a contribution to cover increased household expenses such as the cost of new appliances and the occasional vacation.

The Mazzones claim that, given the nature of the arrangement, the small amounts they received from Mr. Bost did not constitute income which they were obliged to disclose on their tax returns or bankruptcy schedules and statements. Any failure to disclose sums that were received from Mr. Bost, the Mazzone's suggest, was not fraudulent but merely a "scrivener's error" in completing their bankruptcy schedules and statements. Further, the Mazzones suggest that the UST was not ignorant of the fact that they received payments from Mr. Bost because such payments were reflected as deposit in bank statements they provided to the UST in response to the

6

UST's May 2, 2012, letter. Finally, the Mazzones attempt to discredit Mr. Bost's testimony by suggesting that his report to the UST regarding the alleged rent payments was motivated by a desire for retribution as a result of the restraining order they obtained against him. Accordingly, the Mazzones assert that the UST has failed to carry his burden under § 727(d)(1).

**III.     Analysis and Conclusions of Law**

    **1.     Weight of Evidence**

As indicated previously, the Mazzones were not credible witnesses. Mr. Bost's testimony, in addition to being credible, was supplemented by documentary evidence consisting of copies of six checks written by Mr. Bost to Ms. Mazzone ranging in amounts from $450.00 to $850.00. Two of the checks were for the full $850.00 and three of the checks that were for less contained a notation indicating that cash was paid to make up the difference between the check amount and $850.00. Each check was dated on or near the first of the month. Additional evidence included copies of "screenshots" of text messages between Mr. Bost and Ms. Mazzone. In the text messages, Ms. Mazzone states "so remember no rent on taxes" and "you know the rules." There were further exchanges regarding when Mr. Bost would pay "the rest of rent" for a certain month, reducing the rent back to $850.00 per month after it had risen to $950.00 per month, and about the cable bill. Throughout the text messages Ms. Mazzone consistently refers to "rent." The record supports a finding that the Mazzones understood that the money they received from Mr. Bost was both rent and income.

    The Mazzones testimony that they were merely helping out Mr. Bost, their friend, by letting him stay at their home as a guest is absurd. They had known Mr. Bost for less than a month at the time he moved in. The Mazzones' testimony that the rental payments from Mr. Bost were so

inconsistent that they did not consider the payments to be "rent" or "income" but instead a household contribution is a feeble attempt to backfill now that their concealment has been uncovered. Besides, even a household contribution should have been disclosed by the Mazzones on their bankruptcy schedules and statements. As for the alleged "scrivener's error," it was clear from their testimony at trial that neither debtor understood this term of art which they must have heard from someone else. At any rate, by the time of trial over eight months had passed since the UST filed his complaint and the Mazzones had not attempted to correct the scrivener's error by amending any of their bankruptcy schedules or statements.[4] As for Mr. Bost's vengeful motive being the reason he reported the Mazzones to the UST, a desire for revenge is not evidence of insincerity or lack of credibility. Mr. Bost proved to be a credible witness.

### 2. Revocation of the Mazzones' Discharge Under § 727(d)(1)

Bankruptcy Code § 727(d)(1) authorizes a court to revoke a debtor's discharge "if the following elements have been satisfied: (1) the debtor obtained the discharge through fraud; (2) the creditor possessed no knowledge of the debtor's fraud prior to the granting of the discharge; and (3) the fraud, if known, would have resulted in denial of discharge under § 727(a)." *Yules v. Gillis (In re Gillis)*, 403 B.R. 137, 144 (B.A.P. 1st Cir. 2009) (citing 11 U.S.C. § 727(d)(1)). "The party seeking revocation bears the burden of proving each of these elements by a preponderance of the evidence." *Id.*

As to the first element, "[t]he fraud which must be shown is fraud 'in fact,' such as the intentional omission of assets from the schedules, and must involve intentional wrong." *Pelletier*

---

[4] The Mazzones claim to have contacted the bankruptcy attorney who represented them in the main bankruptcy case regarding amending their bankruptcy schedules and statements as recently as January 2014. The fact remains, however, that none of the schedules or statements filed by the Mazzones in support of their bankruptcy petition has been amended.

8

*v. Donald* (*In re Donald*), 240 B.R. 141, 146 (B.A.P. 1st Cir. 1999). Additionally, "[a]llegations of lying ... [at a section 341 meeting] satisfy the requirement of alleging a post-petition fraud." *Gillis*, 403 B.R. at 145. Here, the Mazzones failed to disclose their monthly rental income as of the petition date on schedule I, their average monthly rental income for the six months immediately preceding their bankruptcy filing on Form B22A, and two years and three months' worth of past rental income on their SOFA. I find that these failures were intentional. Further, the Mazzones affirmed the veracity of their bankruptcy schedules and statements under oath at their section 341 meeting of creditors. I find that the Mazzones knew that that they failed to disclose their rental income on their bankruptcy schedules and statements and lied at their section 341 meeting. The Mazzones' behavior equates to fraud in fact and, thus, the UST has satisfied the first § 727(d)(1) element.

As to the second element, there is no evidence in the record which indicates that the UST knew or should have known about the Mazzones' failure to disclose rental income prior to the order granting their discharge. The UST claims ignorance until receiving Mr. Bost's phone call and the record supports him. The Mazzones argue that the UST should have known about the rental income prior to their receiving their discharge because in response to his May 2, 2012, letter they provided the UST with prepetition bank statements which disclosed rental income as deposits into the account. Of course nothing in the bank statements categorized the deposits as rent so the UST could not possibly know what the deposits represented. Further undercutting their defense is the fact that along with the bank statements the Mazzones provided the UST with a sworn affidavit stating that the only persons who lived with them in their home were their two daughters. The UST easily satisfied the second element for establishing a basis to revoke discharge under § 727(d)(1).

Document Page 10 of 12

The third § 727(d)(1) element requires the UST to show that the fraud, if known, would have resulted in denial of discharge under § 727(a). Section 727(a) provides that a debtor who "knowingly and fraudulently, in or in connection with the case… made a false oath or account" shall be denied a discharge. 11 U.S.C. § 727(a)(4)(A). "Under § 727(a)(4)(A), the debtor can be refused his discharge only if he (i) knowingly and fraudulently made a false oath, (ii) relating to a material fact." *Boroff v. Tully* (*In re Tully*), 818 F.2d 106, 110 (1st Cir. 1987). "The burden of proof rests with the trustee…but once it reasonably appears that the oath is false, the burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged." *Id*. (quotation omitted).

"Knowingly and fraudulently made false statements exist if a debtor knows the truth and nonetheless willfully and intentionally swears to what is false." *JP Morgan Chase Bank, N.A. v. Koss* (*In re Koss*), 403 B.R. 191, 213 (Bankr. D. Mass. 2009) (quotation omitted). "A false oath or omission may consist of a false statement or omission in the debtor's schedules…" *Id.* (quotation omitted). As to materiality, "the statute necessitates no more than 'an intentional untruth in a matter material to an issue which is itself material' to justify withholding a discharge." *Tully*, 818 F.2d at 112 (quoting *Troeder v. Lorsch* (*In re Troeder*), 150 F. 710, 713 (1st Cir. 1906)). "Courts have acknowledged that the threshold to materiality is fairly low." *Lussier v. Sullivan* (*In re Sullivan*), 455 B.R. 829, 839 (B.A.P. 1st Cir. 2011) (quotation omitted). Further, "it makes no difference that [a debtor] does not intend to injure his creditors when a false statement is made—creditors are entitled to judge for themselves what will benefit, and what will prejudice, them." *Koss*, 403 B.R. at 211 (quotation omitted).

Section 727(a)(4)(A) "by its very nature, invokes competing considerations." *Tully*, 818

F.2d at 110. On one hand, "[b]ecause the denial of a debtor's discharge under § 727 is characterized as an extreme remedy, the complaint must be construed liberally in favor of the defendant." *Koss*, 403 B.R. at 211 (quotation omitted). "On the other hand, the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs." *Tully*, 818 F.2d at 110.

The Mazzones failed to disclose a rental arrangement and rental income on their bankruptcy schedules and statements and lied about it at their section 341 meeting. For reasons already stated, I find these omissions to have been willful and intentional. They are also material. $850.00 to $950.00 per month in rental income paid in cash or kind over almost three years is not an insignificant sum. John Doherty, a bankruptcy analyst with the office of the UST, testified at trial that if the Mazzones had disclosed their rental income on Form B22A, the presumption of abuse would have arisen pursuant to § 727(b)(2), in which case the UST would have sought dismissal of the Mazzones' chapter 7 case. This alone makes the omission material. The UST has carried his burden to prove that the Mazzones' fraud, if known, would have resulted in denial of discharge under § 727(a)(4)(A).

**IV. The Result**

As the First Circuit warned in *Tully*, "[s]worn statements filed in any court must be regarded as serious business. In bankruptcy administration, the system will collapse if debtors are not forthcoming." *Tully*, 818 F.2d at 112. For the reasons set forth above, the UST has established the necessary elements to justify revoking the Mazzones' discharge under Bankruptcy Code § 727(d)(1). Accordingly, judgment in accord with this memorandum shall enter in favor of the UST

11

on count I (the sole count) of his complaint. The Mazzones' bankruptcy discharge shall be revoked.

At Worcester, Massachusetts this 7th day of May, 2014.

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   Lisa D. Tingue, Esq.
                     Worcester, MA
                     for William K. Harrington, United States Trustee

                     David G. Baker, Esq.
                     Boston, MA
                     for the debtors, Anthony and Michelle Mazzone